[Sac. No. 1370. In Bank.—July 31, 1906.]

## HUGH GLASSELL et al., Appellants, v. ROSS HANSEN, et al., Respondents.

ACCRETIONS TO LAND—ISLAND—OWNERSHIP.—Accretions from private land on the bank of a river by which it is bounded belong to the owner of the land; but land formed by accretions from an island in the center of the river toward such bank, and yet leaving a depression or slough which divides the island from the mainland, is the property of the state.

ID.—DECISION UPON FORMER APPEAL—NEW TRIAL—ERROR IN EVIDENCE.—Where issues were joined as to whether the land in controversy was formed by accretions from the mainland or from the island, and upon a former appeal the law was properly declared, but the judgment and order denying a new trial were reversed in general terms, the issues were to be wholly tried anew; and it was error for the court to refuse to allow the plaintiff to introduce evidence to the effect that the accretions were formed from the mainland toward the island, on the ground that that question had become the law of the case.

APPEAL from an order of the Superior Court of Solano County denying a new trial. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

George A. Lamont, Frank R. Devlin, and McNutt & Hannon, for Appellants.

A. C. Freeman, for Respondents.

McFARLAND, J.—At the time of the commencement of this action the plaintiffs were—and for a great many years prior thereto they and their predecessors in interest had been—the owners in fee of a tract of land in Solano County known generally as the Toland ranch, and having as its eastern boundary what at the time of the inception of their title, and for many years after, was the western bank of the Sacramento River. After plaintiffs had become the owners of the Toland ranch the Sacramento River in front of said ranch commenced to fill up with alluvial deposits, which increased in size from year to year until at the time of the bringing of this present action (May 23, 1899) the "made" land in what was formerly a part of the river, and in front of said ranch, amounted to about one hundred and forty acres. This present action was brought to recover this "made" land, the averments of the complaint being that plaintiffs were seized in fee and entitled to the possession thereof, and that defendants had entered thereon and ousted plaintiffs therefrom. The complaint was not verified, and the defendant Ross Hansen filed an answer in which he "denies each and every allegation in the plaintiffs' complaint contained"; and he afterwards filed a supplemental answer in which he averred that the land in contest was swamp and overflowed land belonging to the state, and that the state in 1885 conveyed said land by a patent to one Kate Nelson, from whom the title by mesne conveyances vested in said defendant. The other defendants disclaim. The court on the trial out of which this present appeal arises gave judgment for defendant Hansen; plaintiff made a motion for a new trial, which was denied, and from the order denying the motion for a new trial plaintiffs now appeal.

There had been a prior trial of the case and an appeal from a judgment in favor of defendants and from an order denying plaintiffs' motion for a new trial. (See *Glassell* v. *Hansen*, 135 Cal. 547, [67 Pac. 964].) At the first trial plaintiffs claimed title upon the theory that the said "made" land in the river was the result of accretions to plaintiffs' said land lying on the west bank of the river, and, therefore, by a well-established principle, belonging to them as owners of the land to which the made land was thus annexed. Defendants' position was that the origin of this new land was

an island which first appeared near the center of the river,
that for a time this island divided the river into two nearly
equal streams—one flowing to the east and the other to the
west of the island, each large enough for the passage of steam-
boats; that gradually the island, which was called Decker
Island, grew by accretions to its western side until the
western stream of the river became nearly filled up, although
there still remains between the island and the mainland a
depression or slough which plainly divides the one from the
other, and that the accretions were all to the island and not
to the Toland ranch on the mainland; and that, therefore,
the new land was, under section 1016 of the Civil Code, the
property of the state, and did not become part of plaintiffs'
mainland by accretion. At the first trial the court found in
accordance with defendants' contention and rendered judg-
ment accordingly. Plaintiffs appealed from that judgment,
and also from an order denying their motion for a new trial.
This court disposed of the appeals by holding that the trial
court was right in finding that the land in contest outside of
the calls of the original patent of the Toland ranch was an
island, and did not belong to plaintiffs by accretion, but that
the court erred in not giving plaintiffs judgment for a strip
of land described in the complaint ·which was not part of
the island; and for this latter reason the judgment and order
denying a new trial were reversed.

When the case came on to be heard at the second trial—
out of which this present appeal arises—the plaintiffs offered
to introduce evidence tending to support their original claim
that said made land consisted of accretions to the said mainland
but the court refused to allow them to introduce such evi-
dence upon the ground that the judgment of this court on
the first appeal had finally determined that the new or made
land in the river was an island and not formed by accretions
to the mainland owned by plaintiffs. This ruling was clearly
erroneous. On that appeal this court merely held, as matter
of law, that if the land was an island ·with its accretions,
and was not made by accretions from the mainland, then it
did not belong to plaintiffs, and that on the said first trial, the
evidence justified the finding of the lower court that the land
was an island. But the court reversed the judgment and
order denying a new trial upon another ground,—namely,

that there appeared to be a small strip of land included in the complaint and belonging to plaintiffs which was not part of the island, that the court had not found that the defendant was not in possession of that strip, and that therefore the judgment and order must be reversed. In reversing the case this court might have directed what issues should again be tried, and what should be deemed finally settled by the first trial; however, it did not do so, and the judgment was merely in the general terms "the judgment and order are reversed." This clearly left the whole case to be tried anew, as if it had not been tried before. (*Falkner* v. *Hendy*, 107 Cal. 54, [40 Pac. 21 386], and cases there cited.) Of course, the law of the case was settled to be that islands formed in the beds of rivers belong to the state, and not to the owners of land fronting on the river bank; but the question whether or not the land in contest in the case at bar was an island or was formed by accretions from the mainland was as fully at issue at the second trial as at the first.

The learned counsel for respondents contends that the court did not limit the evidence as above stated; but this contention cannot be maintained. At the beginning of the statement on motion for a new trial the following appears:—

"After a discussion between the court and counsel as to the issues to be tried, the court held that under the decision of the supreme court in this case (*Glassell* v. *Hansen*, 135 Cal. 547, [67 Pac. 964]), the issues as to the island are settled, and that no testimony is to be introduced on that subject.

"*The Court.*—(After reading the said decision of the supreme court.) Proceed with your testimony. I see no reason for opening that again. There will not be any testimony on the island part at all. That I think is sufficiently settled by this decision.

"*Mr. McNutt.*—(Appearing for plaintiff.) We want to reserve the question, of course. I suppose the regular way would be to introduce the witness and offer proof.

"*The Court.*—Suppose you offer a witness and make statement of what you propose to prove by this witness; then you could get your objection to the ruling of the court. Thereupon, E. C. Dozier was called as a witness for the plaintiffs. (Explanation, and the map used on a former trial is brought in and affixed to the blackboard.) The witness testified that

he knew the land in controversy since 1869 and knew the Sacramento River since that time and knew there had been some filling in of the river since he resided there, and that he had opportunities of observing how the river had filled in.

"Q. *By Mr. Lamont* (attorney for plaintiffs).—Now I wish you would explain to the court how that has taken place there with regard to this land in controversy.

"*Mr. Freeman* (attorney for defendant).—I object now, that it appears that the testimony is to be respecting land in the Sacramento River, to which plaintiffs have shown no title or claim of title. The testimony of the witness should be excluded until there is some evidence.

"*Mr. Lamont.*—Of course, we follow that.

"*Mr. Freeman.*—It seems to me that it ought to precede it, although it is in the discretion of the court at last.

"*The Court.*—What is the purpose of this testimony?

"*Mr. Lamont.*—The purpose is to show that this is accretions from the mainland. We will follow that by the patent and deraignment of title, of course, from the government down to the plaintiffs in this action.

"*The Court.*—As I understand it, you propose by this witness to show that this piece of land in controversy—all of it—is accretions to the land to which it is now joined.

"*Mr. Lamont.*—Yes, or, at least, a portion of it.

"*The Court.*—In other words, the purpose is to show that this piece of land in controversy, which has been called an island by the supreme court is, in fact, not an island but is accretions to the land of your client.

"*Mr. Lamont.*—That is our idea."

There were further offers and discussions similar to the preceding, and the court sustained objections to the testimony. The foregoing shows, we think, very clearly that the court excluded evidence as above stated, and the effect of the ruling was not changed because afterwards plaintiffs were allowed to introduce evidence tending to show that "if the land grows both ways from the land side and from the island side," a certain part of the land in contest was comprised of accretions from the land side. Plaintiffs should have been allowed to show, if they could, that all the land in the river in front of their land was formed by accretions from their land.

Plaintiffs sought also to show title to the land in contest · by prescription, claiming to have been in the actual and adverse possession thereof for more than five years before the commencement of the action. There was a good deal of evidence introduced by both parties on this issue of plaintiffs' title by prescription. We do not deem it necessary to notice such evidence in detail. It is sufficient to say that plaintiffs failed to show such title by actual possession, by pasturing of stock, or by any other means, and as this issue was fully and fairly tried, we do not think that it would be right or just to compel defendant to try it over again. A new trial will, therefore, be ordered only as to the question: Was the made land in contest formed by an island and its accretions, or by accretions from the mainland?

The order denying plaintiffs' motion for a new trial is reversed, and the cause is remanded for a new trial on the sole issue whether the "made" land in the Sacramento River opposite plaintiffs' tract of land called the Toland ranch was formed by accretions from the mainland belonging to plaintiffs, or whether said "made" land appeared as an island and grew from accretions to such island.

Henshaw, J., and Lorigan, J., concurred.