[No. G038857. Fourth Dist., Div. Three. Feb. 1, 2008.]

In re BRENDA M. et al., Persons Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
MARCELINO M., Defendant and Appellant.

## COUNSEL

Linda Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Benjamin P. de Mayo, County Counsel, Karen L. Christensen and Alexandra G. Morgan, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minors.

## OPINION

**FYBEL, J.—**

### INTRODUCTION

Marcelino M. appeals from the juvenile court's order sustaining the allegations of a petition under Welfare and Institutions Code section 300 (all

further statutory references are to the Welfare and Institutions Code unless otherwise specified) and declaring his two children, Brenda M. and Brandon M., dependents of the court. He contends the juvenile court committed prejudicial error by precluding him from presenting evidence or cross-examining witnesses as a sanction for invoking his Fifth Amendment privilege against self-incrimination at the jurisdiction/disposition hearing.

In the recent case of *In re Mark A.* (2007) 156 Cal.App.4th 1124 [68 Cal.Rptr.3d 106] (*Mark A.*), a panel of this court concluded the juvenile court erred by striking testimony as a sanction for the father's invocation of the Fifth Amendment and refusal to testify at a jurisdiction and disposition hearing. The panel held the immunity provided by section 355.1, subdivision (f)[1] is more limited than the Fifth Amendment privilege against self-incrimination and therefore did not justify compelling the father to testify after asserting his Fifth Amendment rights. (*Mark A., supra,* 156 Cal.App.4th at pp. 1128–1129.)

In this case, the juvenile court did not have the benefit of *Mark A.* when it similarly ordered Marcelino to testify at a combined jurisdiction/disposition hearing after he too had invoked his Fifth Amendment right against self-incrimination. When Marcelino refused to testify, the juvenile court, as a sanction, precluded him from offering any evidence or cross-examining any witnesses. The juvenile court erred in doing so. The juvenile court found true the amended allegations of the dependency petition based on the reports prepared by the Orange County Social Services Agency (SSA), the only evidence presented at trial.

In *Mark A., supra,* 156 Cal.App.4th at page 1146, the panel concluded the juvenile court's error was harmless under the *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824] standard because the stricken testimony supported the court's jurisdictional finding. The same cannot be said of this case. At the hearing, Marcelino's counsel stated she would have cross-examined the preparer of the SSA reports had she been permitted to do so. The juvenile court's error was prejudicial because we do not know how the preparer of the SSA reports would have testified on cross-examination or whether cross-examination would have impaired the preparer's credibility. We therefore reverse the juvenile court's order and findings sustaining the allegations of the petition under section 300 and declaring Brenda and Brandon dependents of the court and remand for further proceedings. We do not reverse the juvenile court's order placing the children in the mother's custody, and that custody order shall remain in effect.

---

[1] Section 355.1, subdivision (f) states: "Testimony by a parent, guardian, or other person who has the care or custody of the minor made the subject of a proceeding under Section 300 shall not be admissible as evidence in any other action or proceeding."

## FACTS

On March 26, 2007, Brenda, then age 11, and her four-year-old brother Brandon were taken into protective custody after it was reported Marcelino, their father, had sexually abused Brenda. Brenda had arrived in the United States on February 2, 2006, to live with her mother and Marcelino. In March 2006, Marcelino fondled Brenda's breast and vaginal area over her clothing while she sat on his lap. Brenda told her mother, who confronted Marcelino. He admitted he had behaved inappropriately but minimized his actions. Brenda's mother took no action other than to tell Brenda to inform her of any further sexual abuse.

In November or December 2006, Marcelino called Brenda into his bedroom. Marcelino, who was lying on the bed and wearing only boxer shorts, asked Brenda, " '[d]o you want to sit on the little horse?' " Thinking Marcelino wanted to play a game, Brenda straddled his genital area with her face toward him. He bounced up and down, then started to fondle Brenda's breasts over her clothing. Brenda did not tell her mother about this incident for fear she would call the police or " 'put my father on the street.' "

Brenda told a school friend about the incident that occurred in November or December 2006. The friend told a teacher at Brenda's school, and the school contacted SSA. On March 26, 2007, a social worker interviewed Brenda, who described the two incidents of abuse. On the same day, the social worker also interviewed Brenda's mother, who said she was " 'shocked' " to learn another incident with Marcelino had occurred.

On March 26, 2007, Marcelino was arrested and incarcerated on charges of violating Penal Code section 288 (lewd or lascivious acts with a child). Brenda and Brandon were taken into protective custody on the same day. During a Child Abuse Services Team interview on March 27, Brenda recounted the incidents in which Marcelino fondled her.

### PROCEEDINGS IN THE JUVENILE COURT

On March 28, 2007, SSA filed a dependency petition naming both Brenda's mother and Marcelino. The petition alleged failure to protect (§ 300, subd. (b)) and sexual abuse (§ 300, subd. (d)) based on the two incidents of alleged sexual abuse. The detention hearing was held on March 29. Both Brenda's mother and Marcelino denied the allegations of the petition.

The jurisdiction/disposition report, dated May 1, 2007, reported Brenda and Brandon had been placed with their mother. Marcelino remained in custody and requested that the children not be brought to the jail to visit him.

The jurisdiction/disposition hearing was conducted on June 21, 2007. County counsel subpoenaed Marcelino to testify. In response, Marcelino filed a trial brief invoking his Fifth Amendment right against self-incrimination and arguing section 355.1, subdivision (f) does not provide adequate protection against derivative use of any testimony in the dependency proceedings. At the outset of the jurisdiction/disposition hearing, the juvenile court heard extensive argument on the issue whether Marcelino could invoke the Fifth Amendment and then concluded: "I'm going to find that [section 355.1] does provide the appropriate protection involved. . . . [¶] . . . [¶] And frankly, all published cases that have dealt with this issue have supported that particular proposition. And as county counsel points out, has, in fact, expanded it even beyond testimony, to include statements made to service providers and therapists, and that sort of thing. So I think that it's clear that that's the level of protection that was contemplated. [¶] That being the case, the court—to the extent that there is a request for the court to make a finding, the court does find that [section] 355.1 sub[division] (f) is adequate to provide the appropriate protection for the father so that he may testify. And the court, also, believes it has the authority and power to compel—under that section, to compel the father to testify with respect to these matters."

Later that day, county counsel called Marcelino to testify pursuant to Evidence Code section 776. He invoked the Fifth Amendment and refused to answer the first question. The court advised Marcelino it had ruled he could not refuse to testify on Fifth Amendment grounds because section 355.1, subdivision (f) provided adequate protection against self-incrimination. Marcelino again refused to answer the first question. After giving Marcelino another opportunity to testify, and warning him of the consequences of refusing to do so, the court ordered as a sanction that Marcelino be precluded from presenting any evidence and from conducting any cross-examination of witnesses. No other witnesses were called to testify.

Before Marcelino was called to testify, county counsel offered in evidence SSA's jurisdiction/disposition report dated May 1, 2007, and addendum reports dated May 15, 23, 31, and June 20, 2007. Marcelino's counsel objected "to those reports coming in subject to cross[-]examination of the social worker." After sanctioning Marcelino for refusing to testify, the court asked his counsel: "[C]onsidering that you will not be allowed to cross-examine the preparer, I will allow you to indicate if the court had allowed you to, whether or not you would have cross-examined the preparer of the report." Marcelino's counsel responded she would have cross-examined the preparer.

The court found the allegations of the petition (as amended by striking allegation b-6) to be true by a preponderance of the evidence and declared

Brenda and Brandon to be dependent children under section 360, subdivision (d). The court denied Marcelino reunification services and placed the children in the custody of their mother. Marcelino timely appealed.

DISCUSSION

Under *Mark A., supra,* 156 Cal.App.4th 1124, the juvenile court erred by ordering Marcelino to testify after he invoked his Fifth Amendment right against self-incrimination, and by sanctioning him when he refused to testify. *Mark A., supra,* 156 Cal.App.4th at pages 1144–1145, uses the beyond-a-reasonable-doubt standard of *Chapman v. California, supra,* 386 U.S. 18, to determine whether the error was prejudicial.

Was the juvenile court's error harmless beyond a reasonable doubt? The juvenile court precluded Marcelino from presenting any evidence or cross-examining any witnesses. When county counsel offered the SSA reports in evidence, Marcelino's counsel objected to their admission "subject to cross[-]examination of the social worker." After the court had sanctioned Marcelino for refusing to testify, his counsel confirmed she would have cross-examined the preparer of the SSA reports. The juvenile court's order sustaining the allegations of the petition was based entirely on the SSA reports, which were the only evidence received at the hearing.

The importance of cross-examination cannot be doubted: "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." (*Davis v. Alaska* (1974) 415 U.S. 308, 316 [39 L.Ed.2d 347, 94 S.Ct. 1105], italics omitted.)

In *Mark A., supra,* 156 Cal.App.4th at page 1146, the juvenile court ordered some of the mother's testimony stricken as a sanction for the father's refusal to testify. The appellate panel concluded the error was harmless because "[c]onsideration of the testimony wrongfully stricken would only have bolstered the court's jurisdictional finding." (*Ibid.*) Here, we do not know how the preparer of the SSA reports would have testified on cross-examination or whether cross-examination might have impaired the preparer's credibility. Thus, we cannot say the juvenile court's error in precluding cross-examination of the preparer was harmless beyond a reasonable doubt.

We conclude the juvenile court committed prejudicial error by precluding Marcelino from presenting evidence or cross-examining witnesses as

a sanction for invoking his Fifth Amendment privilege against self-incrimination and therefore reverse and remand.

### DISPOSITION

The juvenile court's order and findings sustaining the allegations of the petition under section 300 and declaring Brenda M. and Brandon M. dependents of the court are reversed and the matter is remanded for further proceedings. The order vesting custody of Brenda and Brandon with the mother shall remain in effect.

Rylaarsdam, Acting P. J., and Aronson, J., concurred.